IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL M. NGRIME, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV533 |
| | ) | |
| v. | ) | |
| | ) | |
| HUNTINGTON PARK CARE CENTER, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 46) and plaintiff's Objection to Defendant's Motion for Summary Judgment (Filing No. 52). Plaintiff has asserted claims for employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.*

The court has carefully reviewed the pleadings, the briefs, and the evidentiary materials filed by the parties. For the reasons explained below, the court finds and concludes that summary judgment should be granted.

**FACTUAL BACKGROUND**

Plaintiff, Michael Ngrime, is a native of Cameroon, Africa and currently resides in Omaha, Nebraska. Defendant, Huntington Park Care Center, Inc. (Huntington Park), is a long term care facility for primarily elderly patients located in Papillon, Nebraska. Defendant employed plaintiff for a period of six or seven months in 1997 and more recently from November 25, 2002 until October 10, 2003. Plaintiff worked for Huntington Park as a Certified Nursing Assistant (CNA). Plaintiff terminated his employment with Huntington Park after his shifts were reduced from full-time to three days per week

Defendant states that shortly after plaintiff began his employment with Huntington Park it received complaints from co-workers regarding plaintiff's behavior.[1] The first of these complaints came on December 14, 2002 by Starlyn Vincent an evening Nurse. Ms. Vincent stated that plaintiff did not take direction well, that his tone of voice sounds angry, that other aides made complaints that he is hard to work with and not a team player. Two other co-workers filed complaints in December of 2002 stating that plaintiff did not work as a team and was argumentative. Plaintiff argues that the complaints are not accurate and that the employees ganged up on him.

On February 24, 2003, plaintiff received his 90-day evaluation stating that plaintiff met acceptable standards in all areas of review and exceeded expected standards in customer service. At this time plaintiff received a pay increase.

In May defendant received two additional complaints concerning plaintiff's job performance. In these complaints plaintiff's co-workers stated that plaintiff did not work well

---

[1] Plaintiff argues that the complaints in his personnel record are inadmissible hearsay. The court disagrees. These records are admissible under Federal Rule of Evidence Rule 803(6), the business record exception and defendant has properly authenticated these documents pursuant to Federal Rule of Evidence 901 (c) through the affidavit of John Turner. (Filing No. 48 Exh. 34) Furthermore, these records are admissible as they are not admitted into evidence to prove the truth of the matter asserted in the complaints, rather, they are admitted to establish defendant's basis for reducing plaintiff's hours. In employment discrimination cases, internal documents relied upon by the employer in making an employment decision are not hearsay as that term is defined in Fed. R. Evid. 801(c)--statements offered to prove the truth of the matters asserted. Rather, such documents are relevant and admissible because they help explain (or may help explain) the employer's conduct. See *Wolff v. Brown*, 128 F.3d 682, 685 (8th Cir. 1997); *Hardie v. Cotter & Co.*, 849 F.2d 1097, 1101 (8th Cir.1988); *Jones v. Los Angeles Comm. College Dist.*, 702 F.2d 203, 205 (9th Cir. 1983); *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1322 (11th Cir. 1982).

with others, that he was difficult to work with, and that he does not do what he is asked to do without yelling or arguing.

On June 6, 2003, Ann McCants, the Director of Nursing, and John Turner, the Administrator at Huntington Park, had a meeting with plaintiff to discuss complaints they had received from a recently discharged patient. The patient alleged that plaintiff did not have compassion for other residents and spoke rudely to residents. Plaintiff was warned that he would be terminated if Huntington Park received any additional complaints from residents. At this meeting, plaintiff was told that if he had concerns with other employee's behavior to write the concerns down and bring them to Ms. McCants.

On July 8, 2003, plaintiff was stopped by police officers for driving erratically in the defendant's parking lot. In the presence of Mr. Turner and Ms. McCants, the police officer informed plaintiff that she was testing him for drugs. Based on this incident, Mr. Turner, Ms. McCants, and human resources ordered plaintiff to take a drug test. Plaintiff argues that the drug test was in violation of Huntington Park's drug testing policy outlined in its handbook. The Handbook allows for reasonable suspicion drug testing.

During the period of August 2003 through October 2003, defendant received additional complaints concerning plaintiff's job performance and attitude with the patients. On August 18, 2003, defendant prepared a disciplinary form reporting plaintiff's verbally abusive conduct towards the residents and the effect that his cologne had on his co-worker. Defendant challenges this form stating that it does not meet the form guidelines outlined in Huntington Park's employee handbook. On September 20, 2003, defendant states a verbal reprimand was given to plaintiff for using the hoyer lift without the assistance of another employee. Plaintiff argues at the time of the reprimand he denied that this

3

happened. In early October defendant states that a resident complained that plaintiff was a "smart mouth" and that this matter was discussed with plaintiff on October 8, 2003 and was considered a written disciplinary issue that would go in his file. During this meeting Ms. McCants informed plaintiff that she had witnessed him sleeping on the job and that she was concerned that maybe he was working too many hours because he was working full time at Huntington Park and full time at another facility. Plaintiff states that he has always worked two jobs and that Huntington Park was aware that he worked two jobs when it hired him. On October 9, 2003, Ms. McCants instructed Shelly Lowis, the staffing coordinator, to inform plaintiff he would be given a schedule of three days a week because he was falling asleep on his shift and working full time at another facility. When plaintiff was informed of the change in his schedule he stated that if that were the case he would not show up for work. After this conversation, plaintiff did not show up for work. Plaintiff contends that he was forced to leave the job. Furthermore, plaintiff alleges that he was given more work than other aides on his shift, was subjected to harassment, and was wrongly accused of sleeping on the job.

      Huntington Park's Disciplinary Policy is outlined in its handbook as a progressive disciplinary policy, stating that the first step is a verbal warning, the second step is a written warning, the third step is a suspension, and the final step is involuntary termination. Defendant states in its handbook that in some instances it must deviate from the progressive disciplinary policy, even immediately terminating an employee.

      On or about November 12, 2003, plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and Equal Employment Opportunity Commission ("EEOC") alleging defendant discriminated against him on the basis of race,

color and national origin. On May 4, 2004 the NEOC issued plaintiff a Commission Determination stating that there was no probable cause of discrimination and that there was no evidence that the complaints made by his co-workers and residents were the result of the plaintiff's race, color, or national origin, but were rather due to his job performance and demeanor.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997).

Accordingly, a party moving for summary judgment must "set forth in the brief in support of the motion for summary judgment a separate statement of each material fact as to which the moving party contends there is no genuine issue to be tried and as to each shall identify the specific document or portion thereof or discovery response or deposition testimony ... which it claims established the fact." NELR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998). In this respect, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts;' ... [i]t must show there is sufficient evidence to support a jury verdict in [its] favor." *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). Accordingly, the nonmoving party must "set forth in its opposing brief a separate statement of each material fact as to which it is contended there exists a genuine issue to be tried and as to each shall identify the specific document or discovery response or deposition testimony ... which it is claimed establishes the issue." NELR 56.1(b). In addition, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

6

## DISCUSSION

**Title VII Claims**

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Summary judgment may be entered in a Title VII action "if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999).

**Prima Facie Case**

A prima facie case of discrimination requires the plaintiff to establish that he 1) is a member of a protected class; 2) was meeting the legitimate expectations of his employer; 3) suffered an adverse employment action; and 4) circumstances exist which give rise to an inference of discrimination. See *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857 (8th Cir. 2004). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993). If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. at 143. The ultimate burden of persuasion remains with the plaintiff throughout the case.

1. Discrimination Allegations

Plaintiff has alleged that defendant discriminated against him by giving him disproportionate work from the other CNA's, subjecting him to an illegal drug test, believing false allegations made by coworkers, and reducing his hours due to false allegations that he was sleeping on the job.[2]

2.Job Performance

In making a prima facie case of discriminatory discharge, the second element regarding "qualification" entails more than simply having met the requisite educational and experiential criteria for the position. It means that the plaintiff must have been performing his job "at a level meeting [the plaintiff's] employer's legitimate expectations." *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 472 n. 7 (8th Cir. 1995); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 546 (8th Cir. 1993). The Eighth Circuit has held that in

---

[2] It is not clear whether defendant is also alleging a claim of hostile work environment. A plaintiff may establish a violation of Title VII by proving that discrimination based on race created a hostile or abusive work environment. "Title VII prohibits 'discriminatory harassment so severe or pervasive as to alter the conditions of employment and create a hostile working environment.'" *Mems v. City of St. Paul*, 224 F.3d 735, 738 (8th Cir. 2000) (quoting *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999)).

> An employer creates a hostile work environment if: (1) the employee is a member of a protected group; (2) the employee is subjected to unwelcome harassment; (3) a causal nexus exists between the employee's membership in the protected group and the harassment; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

*Id.* However, if plaintiff is alleging a claim of hostile work environment, plaintiff has failed to establish a prima facie case of hostile work environment because other than his unsubstantiated conclusory allegations he has not provided anything to establish that a causal nexus exists between his coworkers complaints concerning his job performance and his race.

establishing a prima facie case, the plaintiff "was not required to disprove the reason given for her discharge." *Gill v. Reorganized Sch. Dist. R-6 Festus*, Mo., 32 F.3d 376, 378 (8th Cir. 1994). Rather at the "prima facie stage, [plaintiff] only needed to prove that '[she] was doing [her] job well enough to rule out the possibility that [she] was fired for inadequate job performance.' " *Id.* quoting *Crimm v. Missouri Pac. R. Co.*, 750 F.2d 703, 711 (8th Cir.1984); see also, *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 943 (8th Cir.1994).

In defendant's handbook it states that the types of behavior and conduct that Huntington Park considers inappropriate include insubordination including, but not limited to, refusal to follow a work order from a supervisor, sleeping on the job, and unsafe work practices. Defendant received numerous complaints concerning such behavior on the part of plaintiff. The complaints began shortly after plaintiff began working at Huntington Park and were on-going throughout his employment with defendant. While plaintiff received a positive performance review in February the complaints continued, and even increased, in the eight months after the performance review. While defendant argues that many of the complaints were the result of co-workers ganging up on him, the complaints made against plaintiff were not limited to his co-workers, defendant received complaints concerning defendant's behavior from Huntington Park residents. In addition to the complaints regarding plaintiff's job performance, the Director of Nursing Ms. McCants stated that she observed plaintiff sleeping while on duty, and another co-worker that plaintiff described as "fair" documented that he would nod off while standing still. Based on this evidentiary record, I conclude that plaintiff cannot prove that he was doing his job well enough to rule out the possibility that his hours were reduced for inadequate job performance.

Plaintiff also complains that defendant discriminated against him by initiating an illegal drug test. Defendant has a written drug policy stating that when it has reasonable suspicion of drug use it can administer a drug test. The court cannot think of a better indicia of reasonable suspicion than observing an employee pulled over in the employer's parking lot by law enforcement for erratic driving. Plaintiff's claim that the subsequent drug test was in some way discriminatory is wholly without merit.

Because plaintiff cannot establish that he was meeting the legitimate expectations of his employer he has failed to establish a prima facie case of discrimination and Summary Judgment is granted in favor of defendant.

### 3. Pretext

Although I do not believe plaintiff has met his burden of setting forth his prima facie case, I will assume that, in the alternative, that plaintiff established a prima facie case of race discrimination. The burden would then shift to the defendant to articulate a nondiscriminatory reason for plaintiff's discharge. Defendant has done so.

Defendant has articulated a nondiscriminatory reason for reducing plaintiff's hours, namely, his work performance. Absent another reason, the court is not to sit as a super-personnel department to oversee management decisions. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136-37 (8th Cir. 1999).

Plaintiff submitted no additional evidence to show that the defendant's proffered reasons for the reduction in his hours were merely a pretext for discrimination. I have carefully reviewed the record, and I conclude that there is insufficient evidence to submit this claim to a jury. Consequently, I shall grant the motion for summary judgment.

**IT IS ORDERED:**

    1. That defendant's Motion for Summary Judgment (Filing No. 46) is granted.

    2. That plaintiff's Objection to Defendant's Motion for Summary Judgment (Filing No. 52) is denied.

    3. Pursuant to Fed. R. Civ. P. 58, Judgment will be entered contemporaneously in accordance with this Memorandum and Order.

DATED this 19th day of April 2006.

                                BY THE COURT:

                                s/ F.A. Gossett
                                United States Magistrate Judge